UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

*In re:*

**LARRY VINCENT WILLIAMS,**

    Debtor.

_____/

Case No.: 09-34336-BKC-AJC

Chapter 7

## TRUSTEE'S OBJECTION TO THE DEBTOR'S CLAIMED EXEMPTION ON AMENDED SCHEDULE C

Barry Mukamal as the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of LARRY VINCENT WILLIAMS (the "Debtor" or "Mr. Williams"), by and through undersigned counsel, moves this Court pursuant to Rules 4003 and 9006(b) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 521, 522, 541, and 542, and files this *Objection to Debtor's Claimed Exemption on Amended Schedule C* (the "Objection") for the real property claimed exempt by the Debtor, and in support thereof, states as follows:

### INTRODUCTION

This Debtor voluntarily filed for bankruptcy, and his case has been pending before this Court for the last two and a half years. During this time the Trustee has diligently performed his administrative duties and has sought to sell the Debtor's assets to satisfy his creditors. As of the filing of this Objection, the Miami-Dade Tax Collector is owed approximately $155,000.00 on just the Real Properties (as defined below) that the Trustee seeks to sell, and the Trustee has expended over $60,000.00 in administrative expenses. As described in the Trustee's Sale Motions, he has obtained a pending sale contract on the 925 Property and the 921 Property with the Southeast Community Redevelopment Agency (the "CRA") for $235,000.00. At the eleventh

hour, the Debtor amended his Schedule C in an attempt to prevent this sale from going forward by claiming these two contiguous properties exempt as his homestead.

The Debtor's amendment to Schedule C was made in faith. Despite failing to manifest the requisite indicia of the "intent to reside indefinitely" as required by Florida law, Mr. Williams asserts that his new residency in patently uninhabitable property inures them with homestead status. Prior to amending his Schedule C, Mr. Williams was ordered by this Court to physically vacate the properties and to cease preventing the Trustee from accessing the properties. Instead of complying with this Court's order to vacate the properties, Mr. Williams attempts to cloak himself in the protection of homestead. What is clear from the Debtor's conduct is that he had no intention to reside in, much less occupy, the properties until the Trustee obtained the lawful contract to sell them. Accordingly, any amendments or efforts to claim a homestead exemption to protect these properties are disingenuous, hinder the administration of the estate, prejudice creditors, and should be stricken as filed in bad faith.

## BACKGROUND

1.      On November 4, 2009 (the "Petition Date"), the Debtor filed a voluntary petition[1] for relief under Chapter 7 of the Bankruptcy Code [ECF #1].

2.      The Debtor owns various parcels of real property in Miami and other cities and towns in Florida. Other than outstanding property taxes, there are no known liens encumbering these real properties.

3.      On November 5, 2009, the Debtor filed his first amendments to his schedules disclosing the ownership of four (4) parcels of real property, including 921 NW 2nd Ct.,

---

[1] The schedules filed on the Petition Date do not disclose the ownership of any real property and similarly do not claim any as exempt.

2

Miami, FL 33136, which the Debtor initially valued at $55,000.00. On the Debtor's first amended Schedule C, he claimed a property located at 618 N.W. 8th Ave., Ocala, FL 34475 exempt as his "homestead" (the "Ocala Property") [ECF #13].

4.     On April 23, 2010, the Debtor filed his second amended schedules to reflect the ownership of approximately twenty (20) parcels of real property, including 925 NW 2nd Ct., Miami, FL 33136 on his Amended Schedule A, and various taxing authorities on Schedule D (the "Second Amended Schedules") [ECF # 42]. The Debtor did not claim the 925 NW 2nd Ct. property as his exempt homestead on the Second Amended Schedules.

5.     On September 24, 2010, the Trustee filed an *Ex-Parte Application for Approval of Employment of Jose Carlos Blanco* ("Broker") *and Realty World International Gateway as Real Estate Broker* ("Application for Employment of Broker") [ECF #55]. On October 20, 2010, the Debtor filed an *Objection to the Application for Employment of Broker* [ECF #59], objecting to the employment of any broker to sell the estate's real properties and claiming that it was not in the best interest of the Debtor to have these properties sold.

6.     On December 8, 2010, the Court entered an order denying the Debtor's objection, granting the Application for Employment of Broker [ECF # 72], and authorizing Broker to market the Debtor's multiple real properties (the "Order Granting Broker's Retention").

7.     Pursuant to the Order Granting Broker's Retention, the Broker has been actively marketing the following estate properties, and has successfully identified purchasers for each:

       a)     921 NW 2nd Court, Miami, FL 33101; (the "921 Property");

       b)     925 NW 2nd Court, Miami, FL 33101 (the "925 Property");

       c)     711 NW 5th Avenue, Miami, FL 33136 (the "711 Property")

(collectively, the "Real Properties").

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

8. All three of the Real Properties are located in the Overtown neighborhood. The 921 Property is a vacant 2,750 square foot lot next to the 925 Property that contains a three story, 8,250 square foot "rooming house" structure. The 711 Property also contains a 4,661 square foot multi-family structure. Based on the Trustee's and Broker's multiple inspections, all three Real Properties have been unoccupied and derelict for a number of years.

9. After having marketed the Real Properties for a significant amount of time and identifying cash buyers, the Trustee filed two *Expedited Motions for Orders (I) Authorizing the Sale of Real Properties Pursuant to 11 U.S.C. §363 and 365, (II) Establishing Bidding Procedures; (III) Approving Form of Purchase Agreement; (IV) Scheduling Auction and (V) Approving Form and Manner of Notices,* seeking approval of proposed procedures and related documentation for the sale of 921 and 925 NW 2nd Court, Miami, FL 33101 and 711 NW 5th Avenue, Miami, FL 33136 (together, the "Sale Motions") on April 16, 2012. [ECF#s 119, 120].

10. On Wednesday, April 25, 2012, the Court held a hearing on the Sale Motions. At that hearing, the Debtor appeared with *pro bono* counsel who requested a continuance in order to prepare objections to the Sale Motions. The joint hearing on the Sale Motions was continued until May 16, 2012 (the "Hearing") [ECF #131].

11. In preparation for the Hearing and in continuation of marketing efforts approved by this Court in the Order Granting Broker's Retention, on Friday, April 27, 2012, the Broker visited the 925 Property with police officers seeking to photograph the interior of what the Trustee believed was vacant property.

12. Surprisingly, the Broker encountered the Debtor immediately after entering the 925 Property. Based upon the Broker's brief inspection of the premises and the Debtor's

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

assertions, it appears that the Debtor had taken possession of the 925 Property, despite its uninhabitable condition.

13. Due to the Debtor's presence on the 925 Property and accompanying threats to attack the Broker with a vicious dog, the Trustee filed its *Emergency Motion for an Order Compelling the Debtor to Allow Estate Professionals to Access Real Properties and for Turnover* (the "Motion to Compel Access"). [ECF #127]. The Court entered an order granting the Motion to Compel Access on May 7, 2012, directing the Debtor: (i) to vacate the Real Properties, and (ii) cease interfering with the Trustee's efforts to inspect or otherwise access the Real Properties (the "Order Granting Motion to Compel Access"). [ECF # 132].

14. The Debtor attended the Hearing on May 16, 2012 and was granted another continuance to July 12, 2012 at 3:30 p.m.

15. On May 15, 2012, the Debtor filed an untimely response in opposition to the Sale Motions, alleging that the proposed sale of the Real Properties is abusive and that the Trustee should instead sell some of the Debtor's other properties (the "Response").[2] [ECF #136]. Surprisingly, the Debtor states *for the first time* in this Response that the 921 Property and the 925 Property are exempt pursuant to Article X of the Florida Constitution, and admits that he has been residing in the 921 Property and the 925 Property **"…since being order** *(sic)* **to vacate said real property by the Court on April 16, 2012."**[3]

16. Also on May 15, 2012, the Debtor filed a third amendment to his schedules in the form of an amendment to Schedule C, where the Debtor claims both the 921 and 925

---

[2] The Trustee has attempted to market several of the Debtor's other parties without any expressions of interest, much less offers from other parties.
[3] *See* Paragraph 10 of the Response to Sale Motions.

EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

Properties exempt as his homestead pursuant to Article X of the Florida Constitution (the "Amended Schedule C") [ECF # 137].

17. Until filing his facially improper Amended Schedule C, more than *two years after* filing his voluntary petition and Schedules, the Debtor maintained that the Ocala Property was his homestead for the entirety of his bankruptcy case. The Debtor has made no representations and has not established any evidence of record in this or any other court that he occupied, intended to occupy, or sought to occupy any property other than the Ocala Property as his homestead. The Trustee has relied to his detriment on the Debtor's sworn Schedules and multiple orders of this Court allowing him to market the Debtor's non-homestead property.

18. Accordingly, the Trustee objects to the Debtor's exemption in the 921 Property and the 925 Property and requests that the Debtor's amendment to his schedules be stricken as filed in bad faith.

## OBJECTION TO DEBTOR'S CLAIMED EXEMPTIONS

**i.   The Debtor's Amendment to Schedule C Should Be Stricken Because the Amendment Was Filed in Bad Faith.**

19. Despite having filed a voluntary petition for Chapter 7 relief two and a half years ago, Mr. Williams has undertake an extensive campaign to obstruct the Trustee's efforts to sell the Real Properties, including guarding the 925 Property with a large dog to prevent the Broker's access to the premises. As described on the record and evidenced by photographs taken of the 925 Property attached as **"Exhibit A"** to this Objection, the 925 Property is derelict and in an uninhabitable condition, with few windows, no running water or electricity, full of garbage, in disrepair, and upon information and belief, frequented by squatters. The Amendment to Schedule C is nothing more than Mr. William's last minute attempt to prevent

6

the long awaited sale of the 921 Property and the 925 Property to the CRA, despite having claimed another property exempt as his homestead and testifying several times on the record that he resided elsewhere.[4] Upon information and belief, the 925 Property has also been condemned by the City of Miami due to its poor and hazardous condition.[5]

20. Mr. Williams cannot inhabit a property that is uninhabitable, nor does he manifest the requisite "intent" to remain indefinitely (as further explained below in section ii) in the 921 and 925 Properties when he cannot satisfy outstanding property taxes or perform basic maintenance on the building. Mr. Williams' only reason for filing the Amendment to Schedule C was to delay the process of administration and prejudice administrative and secured creditors who have been waiting for several years to receive payment on Mr. Williams' debts.

21. The Trustee recognizes that pursuant to Bankruptcy Rule of Procedure 1009(a), debtors have an almost absolute right to amend their schedules while their bankruptcy case remains open. Bankruptcy Courts, however, may deny the debtor the right to amend their schedules, including the schedules of exempt assets, upon a showing of debtor's bad faith or prejudice to creditors. *Doan v. Hudgins (In re Doan),* 672 F.2d 831, 833 (11th Cir.1982); *In re Allen*, 454 B.R. 894, 897 (Bankr. S.D.Fla. 2011) (Kimball, J.); *In re Jordan,* 332 B.R. 472, 475 (Bankr.M.D.Fla.2005); *In re Talmo,* 185 B.R. 637, 645 (Bankr. S.D.Fla. 1995) (Mark, J.). Specifically, the Eleventh Circuit has enumerated three discretionary factors that permit courts to deny a debtor's amendment to schedules: (i) if the proposed amendment would prejudice creditors, (ii) if the debtor has acted in bad faith, and (iii) if the debtor concealed

---

[4] The Debtor testified at his 2004 examination that the Ocala Property was his homestead property. The Trustee has ordered the transcript and will provide the same to the Debtor and file it with the Court.

[5] The Trustee is in the process of obtaining the condemnation records of the Debtor's Real Properties from the City of Miami.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

assets. *Doan*, 672 F.2d at 833. Any of these three factors standing alone are sufficient grounds to strike an amended claim of exemption, and all three are present in the instant matter. *See Talmo*, 185 B.R 637 at 645.

22.    In the case of *In re Talmo,* 185 B.R. at 637, after conversion of his case from a case under Chapter 11 to a Chapter 7, a debtor amended his Schedule C to claim 118 acres of commercial farmland as part of his protected homestead. The property had already been the subject of significant litigation and administrative efforts. In ruling on the Trustee's objection to the debtor's amended schedules, the court reasoned that in determining whether to deny an amendment to schedules on the basis of prejudice, the key factor is the effect of allowing the amendment upon creditors and parties in interest. *Id.* at 645. Judge Mark explained that application of *Doan* requires an examination of prejudice to creditors, which may be established by (i) showing harm to the litigating posture of parties in interest if the parties would have taken different actions had the exemption been claimed earlier, (ii) if the interests of parties in interest are detrimentally affecting by the timing of the debtor's amendment, and (iii) finding that an amendment is prejudicial if it impairs a trustee in the diligent administration of the estate. *Id.*

23.    As evidenced by the record, the Trustee and his professionals have expended over two years of time marketing and appraising the 921 and 925 Properties, have located buyers, are prepared to finalize the sale of these properties, have relied on the Debtor's claim of homestead in the Ocala Property, and have obtained an order directing the Debtor to vacate the 921 and 925 Properties. As of filing of this Objection, the Trustee has expended approximately $60,000.00 worth of attorney's fees to assist in the administration of the

estate.[6] Had Mr. Williams claimed the 921 and 925 Properties exempt from the outset of the case, the Trustee would not have devoted the time, resources, and professional fees that have been devoted to selling those properties. In short, the Trustee's reliance on the Debtor's conduct and representations is purely a problem of the Debtor's making, and when the properties are sold after great expense to the estate, the Debtor will have no one to blame but himself.

24. Mr. Williams admitted in the Response to Sale Motions that he only took up occupancy in the 925 Property after the Court ordered that he provide the Trustee access and vacate the premises, which further evidences that Mr. Williams' intentions are inapposite to the "diligent administration" of his estate, the goals of bankruptcy and the authority of this Court. As such, he should not now, two and a half years after the commencement of his case, be permitted to assert a homestead exemption in the most valuable property owned by the estate simply to prevent the satisfaction of creditor's claims.

25. Mr. Williams is mistaken in his belief that his amendment of the schedules grants him pre- bankruptcy rights to reclaim what is now property of the estate. Courts in this Circuit have clearly stated that "…even if a debtor is permitted to amend its schedules, the amendments do not establish substantive rights. Allowing an amendment claiming an exemption is different from allowing the exemption itself." *In re Jordan*, 332 B.R. 472, 475 (Bankr. M.D. Fla. 2005) (*citing Lowe v. Sandoval* (*In re Sandoval*) 103 F.3d 20, 22 (5th Cir.1997); *In re Osborn,* 24 F.3d 1199, 1206 (10th Cir.1994)). The amendment merely serves as notice of the claim of exemption, and any presumption that the amendment is valid

---

[6] A significant portion of these fees were expended in defending the Debtor's appeals of the Order Retaining the Broker and the Order Denying the Debtor's Motion to Dismiss the Bankruptcy Case, both of which were interlocutory. These are just two examples of how the Debtor's own conduct has resulted in the needless increase in professional fees.

9

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

evaporates as soon as a party in interest challenges that claim. *In re Jordan*, 332 B.R. at 475. Accordingly, filing an amendment to his schedules does not in itself eliminate the order directing the Debtor to vacate the premises and imbue the property with homestead status.

26. Accordingly, the Debtor's untimely assertion of a homestead exemption in the 921 Property and the 925 Property should be stricken as filed in bad faith, prejudicial to creditors, and an improper attempt to interfere with the administration of this estate.

### ii. The 921 and 925 Properties Are Not the Debtor's Homestead as Contemplated by Article X of the Florida Constitution.

27. As previously discussed, the building on the 925 Property is in uninhabitable condition. The 925 Property has no connected utilities – no running water, electricity, or air conditioning – and is basically a shell of a building with missing windows, crumbling sheet rock, and squatters. The Broker has been marketing the 925 Property for almost two years, and at all times, until recently encountering Mr. Williams on the premises, has reported that the property was abandoned and unoccupied by any "legitimate" inhabitants.

28. The Florida Continuation provides in pertinent part:

> (a) There shall be exempt from forced sale… the following property owned by a natural person:
> (1) A homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, … or if located within a municipality, to the extent of one half acre of continuous land upon which the exemption shall be limited to the residence of the owner or his family.

Fla. Const. Art. X, §4(a)(1).

29. In Florida, consistent with the policy of liberally construing entitlement to homestead in favor of the family home, homestead is established by actual occupancy of the subject property accompanied by the intent to reside in the property as one's homestead:

"[h]omestead status is established by the actual intention to live permanently in a place coupled with actual use and occupancy." *In re Lee*, 223 B.R. 594, 598-9 (Bankr. M.D. Fla. 1998) (holding debtor entitled to homestead exemption when maintained use and control of property, paid all real property taxes, and claimed homestead exemption on taxes) (*citing Hillsborough Investment Co. v. Wilcox,* 152 Fla. 889, 13 So.2d 448, 450 (1943); *In re Brown*, 165 B.R. 512, 514 (Bankr.M.D.Fla.1994))). "The character of property as a homestead depends upon an actual intention to reside thereon as a permanent place of residence, coupled with the fact of residence." *Hillsborough Investment Co.,* 13 So.2d at 450.

30.    "Under the Florida decisions, actual occupancy of a home with intention to remain there and make it the home of the family, the place of their actual use and occupancy, is essential to the homestead right." *In re Lee*, 223 B.R. at 598-9 (*citing Edward Leasing Corp. v. Uhlig*, 652 F.Supp. 1409, 1412 (S.D. Fla.1987)); *accord Wechsler v. Carrington*, 214 F.Supp.2d 1348, 1351 (S.D. Fla. 2002) ("In order to qualify his or her property with homestead status, the party seeking the protection of the exemption must have an actual intent to live permanently on the property *and* actual use and occupancy of the property") (emphasis in original*); Lanier v. Lanier,* 95 Fla. 522, 116 So. 867 (1928) (finding that abandonment of homestead depends on facts including an actual intention to reside thereon, coupled with the fact of residence).

31.    In this instance, the Debtor has failed to meet the requirements to claim the 921 and 925 Property as his homestead. Other than filing the Amended Schedule C claiming the 925 and 921 Properties exempt, and appearing on the premises upon inspection once, the Debtor has done nothing further to evidence his intention to remain indefinitely in the 925 Property. He has failed to pay property taxes since 2004, has failed to perform basic

maintenance, and instead has allowed the 925 Property to become derelict and a hazard to anyone that may occupy the premises.

32.     A homestead has been abandoned when it is no longer a "bona fide home and place of permanent abode." *In re McCarthy,* 13 B.R. 389, 390 (Bankr.M.D.Fla.1981), *In re Frederick,* 183 B.R. 968, 971 (Bankr. M.D. Fla. 1995), *In re Gaines*, 05-14608, 2007 WL 1228157 *1, *1 (Bankr. M.D. Fla. Apr. 18, 2007) (although the debtor claimed that he intended to re-occupy vacant property claimed as homestead, the court found that there was only evidence to show is that over the years, in addition to being absent from the property, the debtor had failed to maintain it, pay property taxes, and thus failed to indicate an intent to maintain the property as his homestead). In this case, the 921 and 925 Property have been similarly abandoned by the Debtor. He has failed to maintain the property, pay property taxes, or inhabit the property for any meaningful length of time. Accordingly, the Debtor's only manifest intent has been to abandon the 921 and 925 Property. *See, e.g. Gaines*, 2007 WL 1228157 at *1; *McCarthy*, 13 B.R. at 390.

33.     The Trustee recognizes that some Courts in this district have also found that despite inhabitability of a property, the homestead exemption can remain where there is no evidence of a debtor's intent not to return to the residence. *See In re Herr*, 197 B.R. 939 (Bankr. S. D. Fla. 1996) (Cristol, J.) (after 35 years of occupancy, debtor's homestead was destroyed by Hurricane Andrew and debtor was financially unable to make the house habitable again, however, the Court found that the exemption survived due to the debtor's intent to remain). In this case, however, the Debtor's physical absence from the 925 Property was not involuntary. He was voluntarily residing elsewhere as he previously testified and swore to in two previously filed rounds of Schedules. Any recent amendments to his

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

Schedules claiming an exemption in the 921 and 925 Properties were filed in bad faith and should be denied.

## CONCLUSION

34. Consistent with the case law in this District, the Debtor's amendment to his schedules should be stricken on the basis that the homestead exemption was amended in bad faith, with the intent to prejudice creditors, and thwart the administration of the bankruptcy estate by preventing the sale of the 921 Property and 925 Property to pay the Debtor's mounting claims.

35. Furthermore, the Trustee has already requested, and the Court has ordered that the Debtor vacate the premises and cease preventing access to property of the estate. In the Order Granting Motion to Compel Access, the Court ordered the Debtor to vacate the Real Properties with at least 48 hours notice. The Debtor has had ample notice that he should not be occupying any of the Real Properties. Accordingly, the Trustee once more reserves the right to seek sanctions for the Debtor's consistent failure to comply with the orders of this Court.

**WHEREFORE**, the Trustee respectfully requests the entry of an order (i) striking the Debtor's amendment to Schedule C, (ii) disallowing the Debtor's claimed homestead exemption on the 921 and 925 Property, and for (ii) any other, further relief this Court deems appropriate.

*[Signature page to follow]*

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com**

   ***I HEREBY CERTIFY*** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

Respectfully submitted by,

        EHRENSTEIN CHARBONNEAU CALDERIN
        Attorneys for the Trustee
        501 Brickell Key Drive, Suite 300
        Miami, Florida 33131
        T. 305.722.2002  F. 305.722.2001

        By: */s/ Nicole Grimal*
          Daniel L. Gold, Esq.
          Florida Bar No.: 0761281
          dgold@ecclegal.com
          Nicole Grimal, Esq.
          Florida Bar No.: 86937
          ngrimal@ecclegal.com

## **CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case and via U.S. Mail to Harry Geissinger, Esquire, P.O. Box 2218 Palm Beach, FL 33480, Larry Vincent Williams 921 NW 2nd Court, Miami, FL 33101 and 925 NW 2nd Court, Miami, FL 33101 on the 15th day of June, 2012.

        By: */s/ Nicole Grimal*
          Daniel L. Gold, Esq.
          Florida Bar No.: 0761281
          dgold@ecclegal.com
          Nicole Grimal, Esq.
          Florida Bar No.: 86937
          ngrimal@ecclegal.com

# Exhibit "A"

SUBJECT PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: EHRENSTEIN CHARBONNEAU CALDERIN, Attorneys at Law | File No.: 1205006 |
| Property Address: 925 NW 1 Ct | Case No.: |
| City: Miami | State: FL    Zip: 33136 |
| Lender: None | |



**FRONT VIEW OF SUBJECT PROPERTY**

Appraised Date: May 9, 2012
Appraised Value: $ 230,000



**REAR VIEW OF SUBJECT PROPERTY**



**STREET SCENE**

| | |
|---|---|
| Borrower: EHRENSTEIN CHARBONNEAU CALDERIN, Attorneys at Law | File No.: 1205006 |
| Property Address: 925 NW 1 Ct | Case No.: |
| City: Miami    State: FL | Zip: 33136 |
| Lender: None | |



Stop Work order



Construction equipment stored on Property



Trash and beds in parking lot.

| | |
|---|---|
| Borrower: EHRENSTEIN CHARBONNEAU CALDERIN, Attorneys at Law | File No.: 1205006 |
| Property Address: 925 NW 1 Ct | Case No.: |
| City: Miami          State: FL | Zip: 33136 |
| Lender: None | |



Sleeping mat in parking lot



Trash in front of the building & broken window



| | |
|---|---|
| Borrower: EHRENSTEIN CHARBONNEAU CALDERIN, Attorneys at Law | File No.: 1205006 |
| Property Address: 925 NW 1 Ct | Case No.: |
| City: Miami    State: FL | Zip: 33136 |
| Lender: None | |



Bathroom
PHOTO supplied by JC Blanco



Interior of a room
PHOTO supplied by JC Blanco



Interior of Room
PHOTO supplied by JC Blanco