

**ORDERED in the Southern District of Florida on June 28, 2013.**

_____
A. Jay Cristol, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

*In re:*

LARRY VINCENT WILLIAMS,

      Debtor                               /

Case No. 09-34336-BKC-AJC

Chapter 7

### ORDER SUSTAINING-IN-PART TRUSTEE'S OBJECTION TO THE DEBTOR'S CLAIMED HOMESTEAD EXEMPTION

**THIS MATTER** came on for hearing on June 4, 2013 at 2013 p.m. (the "Hearing") upon the *Objection to Debtor's Claimed Exemption on Amended Schedule C* (the "Objection") [ECF#140], filed by Barry Mukamal, the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Larry Vincent Williams (the "Debtor"). The Court has considered the Objection, the Debtor's Amended Schedule C [ECF# 137], the Trustee's *Supplement to Objection to Debtor's Claimed Exemptions* (the "Supplement") [ECF# 177], the arguments of counsel at the Hearing, the pleadings on the docket, and the post-hearing submissions of the parties, including Trustee's proposed order and *Debtors [sic] Memorandum of Law* [ECF# 182]. Being fully advised in the matter, the Court determines that consideration of the Objection and Supplement is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2), the Court has jurisdiction over the matters raised in the Objection and Supplement pursuant to 28 U.S.C. §§ 157 and 1334, and Sustains-in-part the Objection as set forth herein as being in the best interests of the estate, its creditors, and the Debtor. Proper and adequate notice of the Objection and the Hearing has been given, and no further notice is necessary.

## BACKGROUND

On November 4, 2009 (the "Petition Date"), the Debtor filed a voluntary petition[1] for relief under Chapter 7 of the Bankruptcy Code [ECF #1]. The Trustee was appointed on the Petition Date.

The Debtor owns various parcels of real property in Miami and other cities and towns in Florida. Other than substantial outstanding real property taxes, there are no known liens encumbering the real properties.

On November 5, 2009, the Debtor filed his first amendments to his schedules disclosing the ownership of four (4) parcels of real property, including 921 NW 2nd Ct., Miami, FL 33136, which the Debtor initially valued at $55,000.00 (the "First Amended Schedules"). [ECF# 42]. On the Debtor's First Amended Schedules, he amended Schedule C and claimed property located at 618 N.W. 8th Ave., Ocala, FL 34475 exempt as his homestead (the "Ocala Property") [ECF #13]. Under the well-recognized principle of judicial estoppel, this sworn statement is sufficient to prevent the Debtor from later claiming the 921/925 NW 2nd Court properties exempt as homestead.

On April 23, 2010, the Debtor filed a second amendment to his schedules to reflect his ownership of approximately twenty (20) parcels of real property, including 925 NW 2nd Ct.,

---

[1] The schedules filed on the Petition Date do not disclose the ownership of any real property and similarly do not claim any as exempt.

Miami, FL 33136 on his Amended Schedule A, and amounts due to various taxing authorities for tax liens on Schedule D (the "Second Amended Schedules") [ECF # 42]. The Second Amended Schedules did not amend the Debtor's designation of homestead in Ocala. So twice he swore the Ocala Property was his homestead.

On September 24, 2010, the Trustee filed an *Ex-Parte Application for Approval of Employment of Jose Carlos Blanco* ("Broker") *and Realty World International Gateway as Real Estate Broker* ("Application for Employment of Broker") [ECF #55]. On October 20, 2010, the Debtor filed an *Objection to the Application for Employment of Broker* [ECF #59], objecting to the employment of any broker to sell the estate's real properties and claiming that it was not in the best interest of the Debtor to have these properties sold. However, the Court notes that the 921/925 NW 2nd Court properties are subject to tax liens in excess of $28,000; and, turning the properties over to the Debtor as a homestead would very likely result in the loss of the properties on a tax sale with the Debtor receiving nothing for his interest.

On December 8, 2010, the Court, overruling the Debtor's objections, entered an order granting the Application for Employment of Broker [ECF # 72], and authorizing Broker to market the Debtor's multiple real properties (the "Order Granting Broker's Retention").

The Broker marketed the Debtor's portfolio of properties and identified purchasers for the following three parcels:

    a)    921 NW 2nd Court, Miami, FL 33101; (the "921 Property");

    b)    925 NW 2nd Court, Miami, FL 33101 (the "925 Property");

    c)    711 NW 5th Avenue, Miami, FL 33136 (the "711 Property")

(collectively, the "Real Properties"). All three of the Real Properties are located in the Overtown neighborhood. The 921 Property is a vacant 2,750 square foot lot next to the 925 Property that

contains a three-story, thirty room, 8,250 square foot apartment building. The 711 Property also contains a 4,661 square foot multi-family structure. Based on the Trustee's and Broker's inspections when preparing to market the Real Properties, all three Real Properties appeared unoccupied and derelict.

On April 16, 2012, after having marketed the Real Properties for a significant amount of time and identifying cash buyers, the Trustee filed two *Expedited Motions for Orders (I) Authorizing the Sale of Real Properties Pursuant to 11 U.S.C. §363 and 365, (II) Establishing Bidding Procedures; (III) Approving Form of Purchase Agreement; (IV) Scheduling Auction and (V) Approving Form and Manner of Notices,* seeking approval of proposed auction procedures and related contracts for the sale of 921 and 925 NW 2nd Court, Miami, FL 33101 and 711 NW 5th Avenue, Miami, FL 33136 (together, the "Sale Motions"). [ECF#s 119, 120].

On Wednesday, April 25, 2012, the Court held a hearing on the Sale Motions. At that hearing, the Debtor appeared with counsel who requested a continuance in order to prepare objections to the Sale Motions. The joint hearing on the Sale Motions was continued until May 16, 2012 (the "Sale Hearing"). [ECF #131].

On May 15, 2012, the Debtor filed a response in opposition to the Sale Motions, arguing that the Trustee should instead sell some of the Debtor's other properties aside from the 921, 925, and 711 Properties (the "Response"). [ECF #136]. In the Response, the Debtor stated for the first time that the 921 Property and the 925 Property are exempt pursuant to Article X of the Florida Constitution, and that he had been residing in the 921 Property and the 925 Property despite ". . . being order *(sic)* to vacate said real property by the Court on April 16, 2012."[2]

---

[2] *See* Response at ¶10. The Court previously ordered the Debtor to vacate the 921 and 925 Property to allow the Trustee proper access to those properties to prepare them for sale. *See* [ECF# 132]. The Debtor had not yet claimed these properties as his homestead at the time of the entry of this order.

4

Also on May 15, 2012, the Debtor amended his Schedule C, claiming both the 921 and 925 Properties exempt as his homestead pursuant to Article X of the Florida Constitution (the "Amended Schedule C"). [ECF # 137]. Until filing the Amended Schedule C, more than two years after filing his voluntary petition and First Amended Schedules, the Debtor maintained that the Ocala Property was his homestead for over two and one half (2-1/2) years, until his amended claim of homestead was filed on May 15, 2012.

On June 15, 2012, the Trustee filed the Objection, arguing that the Debtor claimed the 921 and 925 Property as his exempt homestead in an effort to frustrate the Trustee's attempt to sell those properties. The Trustee argued that the Amended Schedule C was filed in bad faith and that the amended claim of exemption should be stricken. After several continuances of the hearing on the Objection, the Trustee examined the Debtor under Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Examination"). *See* ECF# 179, Transcript of 2004 Examination of Larry Vincent Williams dated May 24, 2013 (the "Transcript"). At the Examination, the Debtor testified that he had resided at the 925 Property since the Petition Date, and that he filed the Schedules, exempting no property as his homestead and the First Amended Schedules, exempting the Ocala Property as his homestead, in error. *See* Transcript at pp.7-13.

In addition, the Debtor testified that the 925 Property is a 28 room structure with no utilities and that the Debtor is the 925 Property's only resident. *See* Transcript at p.14.[3] The Debtor further testified that units in the 925 Property had previously been rented, but that the City of Miami had evicted him and those renting units at the 925 Property in 1999. *Id.* at pp.18-19. The Debtor also testified that he occupied approximately one-third of the building on the 925 Property because the remaining two-thirds are badly damaged. *Id.* at 19-20.

---

3 The Debtor did testify that his son receives mail at the 925 Property, but that he is presently overseas in Afghanistan. *See* Transcript at pp.18-19.

5

After taking the Examination, the Trustee filed the Supplement. In the Supplement, the Trustee argued that in the event that the Court was not inclined to sustain the Objection, the Court should permit the Trustee to sell the 921 and 925 Property because the 921 Property is a vacant lot on which the Debtor does not reside, and the 925 Property is indivisible with only one-third being occupied by the Debtor. The Trustee argues that pursuant to *In re Englander*, 95 F.3d 1028, 1032 (11th Cir. 1996), the preferred resolution of such objections to claimed homestead exemptions is to allow the property to be sold and to apportion the proceeds between the estate and the debtor on account of that portion deemed the debtor's homestead.

At the Hearing, counsel for the Debtor and the Trustee presented oral arguments regarding the Objection, the Supplement, and the Debtor's Amended Schedule C. The Debtor did not dispute that the 921 Property is a vacant lot and that the Debtor does not reside there. Although the parties disagreed on the record about whether the Debtor is the only person residing at the 925 Property, the Debtor's Rule 2004 Examination testimony establishes that he is the only resident at the 925 Property and that he occupies one-third of the building. *See* Transcript at 14, 19-20. The Debtor did not dispute that the 925 Property is zoned as a "multi-family" structure and that the City of Miami has filed a Notice of *Lis Pendens* against the 925 Property for unpaid real estate tax assessments. *See* Book 27324/Page 4016, CFN# 20100412698. The Claims Register reflects that at the time of the Hearing, $115,625.55 in secured claims had been filed against the Debtor for unpaid real estate tax assessments.

## **CONCLUSIONS OF LAW**

The Court, having considered the background facts and procedural history of the case, Sustains-in-Part the Objection. The Court holds that the Trustee is authorized to sell the 921 and

925 Property and that the proceeds will be apportioned between the estate and the Debtor to reflect that portion of the 925 Property in which the Debtor resides as his homestead.

Article X, Section 4, of the Florida Constitution, states in pertinent part:

> *Homestead—exemptions*
> (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
> (1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family. . .

In Florida, consistent with the policy of liberally construing entitlement to homestead in favor of the family home, homestead is established by actual occupancy of the subject property accompanied by the intent to reside in the property as one's homestead: "[h]omestead status is established by the actual intention to live permanently in a place coupled with actual use and occupancy." *In re Lee*, 223 B.R. 594, 598-9 (Bankr. M.D. Fla. 1998) (*citing Hillsborough Investment Co. v. Wilcox,* 152 Fla. 889, 13 So.2d 448, 450 (1943); *In re Brown*, 165 B.R. 512, 514 (Bankr. M.D.Fla. 1994)). "The character of property as a homestead depends upon an actual intention to reside thereon as a permanent place of residence, coupled with the fact of residence." *Hillsborough Investment Co.,* 13 So.2d at 450.

In this case, the Debtor testified that he has resided at the 925 Property since the Petition Date and that the various Schedules and amendments to his Schedules, claiming the Ocala Property as his homestead, were filed in error. Transcript at p.19. The Court recognizes that the Debtor filed his petition and Schedules *pro se* and that he filed his Amended Schedule C after he

7

was represented by counsel. However, facts gleaned from the record indicate that, as a "best case" scenario, the Debtor does not occupy and reside in the entire 925 Property but only, per his sworn testimony, in one third (1/3) of the premises. He, therefore, is not entitled to exempt the whole of the 925 Property as his homestead, and the Court will overlook the fact that he may be judicially estopped from claiming any portion of the 925 Property as homestead.

"While the Florida Constitution does not define the term "homestead," it does provide various limitations and requirements. Among these are an acreage limitation, an ownership requirement, and a residency limitation." *In re Wierschem*, 152 B.R. 345 (Bankr. M.D.Fla. 1993). Premised upon the residency requirement, a majority of bankruptcy courts have ruled that an owner of a multi-family property cannot claim the leased portion of the property exempt as his homestead. *See In re Englander*, 95 F.3d 1028, 1032 (11th Cir. 1996) (affirming district court holding that property exceeding homestead acreage limitation should be sold and apportioned between debtor and estate); *In re Nofsinger*, 221 B.R. 1018, 1021 (S.D.Fla.1998) ("the homestead exemption only extends to that portion of the property which a debtor uses as his residence and cannot include any portion which is rented to and occupied by a third party or used by the third party as his own business."); *Wierschem*, 152 B.R. at 349 (court sustained objection to claimed homestead to the extent that it exceeded the residency limitation because the Debtor only resided in a portion of the building and rented the remaining units); *In re Aliotta*, 68 B.R. 281 (Bankr. M.D.Fla. 1986) (court held that three of four units in a multi-family building were not part of the debtor's residence and therefore not entitled to exempt status); *see also First Leasing & Funding of Florida, Inc. v. Fiedler*, 591 So.2d 1152, 1153 (Fla. 2d DCA 1992) (same). In this case, it is makes no difference that the Debtor is not actually renting any of the

units in the 925 Property. That those units are currently uninhabitable does not render the whole 925 Property exempt as homestead.

Before the Eleventh Circuit issued its opinion in *Englander*, this Court utilized a two-prong divisibility test to determine the proper scope of a debtor's homestead exemption in indivisible, multi-family real property. In *In re Kuver,* 70 B.R. 190, 192 (Bankr. S.D.Fla. 1986), this Court ruled that a debtor could exempt the entirety of a duplex notwithstanding that one unit was rented to a third party because the property could not be divided and sold under existing zoning laws. In *In re Makarewicz* 130 B.R. 620, 621 (Bankr. S.D.Fla. 1991), this Court explained that "the criteria for divisibility should include not only whether a unit or parcel is susceptible to division by perpendicular and/or horizontal lines, but also whether such unit or parcel is lawfully conveyable as an independent parcel under existing law." In this case, the Trustee concedes that the 925 Property is indivisible and that the units in their present layout cannot be individually conveyed. The 925 Property, however, should be sold nonetheless.

The Court recognizes that the divisibility tests it developed in *Kuver* and *Makarewicz* were developed before the Eleventh Circuit's opinion in *Englander*. Thus, if applicable, the Court will follow *Englander*, and limit the Debtor's claim of homestead to that portion of the 925 Property in which he actually resides, and apportion the sale proceeds between the estate and the Debtor. *See, e.g., In re Wierschem*, 152 B.R. at 349 (following *Englander* and holding "[b]ecause the property is indivisible, the court will permit the trustee to sell the entire real property and divide the proceeds, after satisfying any mortgage or other liens of record and paying the ordinary and necessary costs and expenses of sale and closing, between the estate and the debtors").

With regard to the 921 Property, the Debtor fails to satisfy the residency requirement of Florida's homestead exemption because the parcel is unimproved raw land. The Debtor's claimed homestead exemption in the 921 Property must therefore be disallowed in its entirety, and no portion of the potential sale proceeds therefrom will be apportioned to the Debtor on account of the 921 Property. *See, e.g., Englander*, 95 F.3d at 1031 (homestead requires actual residency).

The 925 Property is laid out as a "boarding house" with multiple units with single ingress and egress for the purpose of renting them. In fact, the Miami-Dade property records indicate that the 925 Property is zoned as "multi-family" and has thirty living units in total within the structure. The Court's divisibility test announced in *Makarewicz* could be broadly read to allow the exemption of all thirty units in the 925 Property as Debtor's homestead because the property is not susceptible to division into units which can be lawfully conveyed. 130 B.R. 621. However, this case is completely distinguishable from the *Makarewicz* case, and the Court believes that expansive a reading of the *Makarewicz* case is far-fetched. In *Makarewicz*, the property the Trustee sought to have determined to be non-exempt was a two-story garage of a single family structure. The garage was divided into various areas, some of which the debtor used as a laundry room and storage facility and some of which the Debtor rented to third parties on a month-to-month basis. There were only two (2) leased and rented areas, each consisting of a single room, and the property was zoned as a single family residence. In the case *sub judice*, the 925 Property is zoned as a multi-family property and has thirty separate living units. Although the Property may not be susceptible to division into units which can be lawfully conveyed, the Debtor cannot exempt all thirty living units as his homestead. In fact, he is currently prohibited from living on the Property. The Court believes the *Makarewicz* case is inapplicable under the

facts herein and orders the 925 Property sold and the proceeds apportioned among the Debtor and the estate.

Finally, the Court notes that the *Lis Pendens* filed by the City of Miami and the mounting tax liens against the 921 and 925 Property make the sale of these properties the best chance for the estate and the Debtor to realize any value from them. If these properties are not sold by the Trustee, the City of Miami will most likely take the 921 and 925 Property from the Debtor in a tax deed foreclosure action, and the Debtor will likely realize nothing in such a foreclosure. Accordingly, the Trustee's proposed sale of the 921 and 925 Property is the best means for the Debtor to reap some benefit from these properties.  It is therefor

**ORDERED AND ADJDUGED** that the Objection is SUSTATINED in part, and the Trustee is authorized to sell the 925 and 921 Property. The sale proceeds will be apportioned between the estate and the Debtor to account for the proceeds derived from that portion of the 925 Property that the Debtor is claiming as his homestead. The proceeds shall be apportioned by separate order of the Court at such time as the 921 and 925 Property are sold.

# # #

Submitted by:

Daniel L. Gold, Esq.
Ehrenstein Charbonneau Calderin
Counsel to the Chapter 7 Trustee
501 Brickell Key Drive, Suite 300
Miami, FL 33131